UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
GARY RODRIGUEZ,                      : 10 Civ. 3451 (RMB) (JCF)
                                     :
            Petitioner,              :        REPORT AND
                                     :     RECOMMENDATION
     - against -                     :
                                     :
WILLIAM LEE, Superintendent Green    :
Haven Correctional Facility,         :
                                     :
            Respondent.              :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:

     Gary Rodriguez brings this petition for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254, challenging his conviction
under New York state law of one count of burglary in the first
degree and one count of burglary in the second degree.  He contends
that: (1) his conviction was against the weight of the evidence
presented at trial; (2) he was denied his right to confront the
witnesses against him under the Confrontation Clause of the Sixth
Amendment by the introduction at trial of taped 911 calls; (3) his
sentence is excessive; and (4) he received ineffective assistance
of appellate counsel when his attorney failed to raise claims of
prosecutorial misconduct and ineffective assistance of trial
counsel on direct appeal.  For the reasons that follow, I recommend
that the petition be denied.

Background

     A.   The Crime

     On August 9, 2004, Ming Qin Li was walking through an alleyway
in downtown Manhattan, carrying two large shopping bags containing
the laptop computer and carrying case that he had just purchased

1

from J&R, a computer store nearby.  (Trial Transcript ("Tr.") at
37-44).  As Mr. Li walked through the alley, two men "rushed
toward" him and, "using a gun to point at" him, demanded that he
give them money.  (Tr. at 45-46).  One of the men -- identified by
Mr. Li at trial as the petitioner, Gary Rodriguez -- took Mr. Li's
wallet out of his pocket and removed approximately thirty dollars,
while the man holding the gun -- the petitioner's associate, Jose
Medina -- looked through Mr. Li's bags to determine their contents.
(Tr. at 46-48, 52).  After Mr. Rodriguez had taken Mr. Li's money,
he and Mr. Medina each grabbed one of Mr. Li's bags and ran away.
(Tr. at 53-54).  Mr. Li picked up his wallet from the ground, where
the petitioner had thrown it, and began to chase after them.  (Tr.
at 54-56).

As he ran, Mr. Li yelled for someone to call the police, and
a bystander, Gang Zhang, joined him in chasing the two men.  (Tr.
at 54, 62, 98, 105, 287, 289).  Three other bystanders called 911
to report the ongoing chase, two of whom indicated that the
suspects being chased were carrying J&R bags.  (Hearing Transcript
dated April 19, 2005 ("H. Tr.") at 46-47, 49-52; Tr. at 404).  Two
New York City police officers in a patrol car two blocks away
received a robbery-in-progress call over the radio and drove
immediately to the reported location, where they observed two men,
one black and one Hispanic, being chased by two Asian males.  (Tr.
at 122-25, 156-57, 184, 186-87, 207-08).  The police officers
observed the two suspects separate as the patrol car approached, so
they stopped the car and each pursued one of the suspects on foot.

(Tr. at 128, 189-90).  Officer Jeffrey Millenbach apprehended the petitioner, who immediately dropped the large J&R shopping bag containing Mr. Li's laptop carrying case, which he had been carrying with him as he was being chased.  (Tr. at 118, 128-29, 292).  His partner, Officer Mashud Rahman, apprehended Mr. Medina, who by that time was not carrying any stolen merchandise.  (Tr. at 132, 179, 190, 209).

Mr. Li, who had caught up to the police officers, identified the two men who had been apprehended as the men who had robbed him and indicated that a gun had been involved.  (Tr. at 65-67, 134-35, 311).  Both of the suspects were placed under arrest and transported to the precinct for processing.  (Tr. at 133-35, 157-59).

Several children, a number of whom were on bicycles, told another police officer at the scene that they had seen someone hand off a bag to a person on a bicycle.  (Tr. at 328, 334-36). Officers performed a quick canvass of the area in search of the gun, the shopping bag containing Mr. Li's laptop, and the individual on a bicycle, but did not find anything.  (Tr. at 198-99, 210-13, 295-96, 306, 328-30, 339-40).  Because a weapon was involved, the officers called the Emergency Services Unit, which conducted a sweep search for the same items in the area where the suspects had been placed under arrest.  (Tr. at 158, 161-63).  The search was ultimately unsuccessful.  (Tr. at 163).  Additionally, although Mr. Rodriguez was carrying the J&R bag containing Mr. Li's laptop case when he was stopped by Officer Millenbach, he did not

have any money on him when he was later searched at the precinct. (Tr. at 171, 178).

Several hours after the robbery, narcotics detectives were on patrol in the area and noticed three young men passing a bag between themselves in a suspicious manner. (Tr. at 170, 230, 234, 243-44, 246, 260-61). The detectives stopped them and discovered that the bag contained several pairs of pants and a laptop. (Tr. at 170, 234, 244). One of the three men, Jonathan Zayas, was the last person left holding the bag when they were stopped. (Tr. at 234, 244, 260). He reported that he had purchased the laptop for one hundred dollars from a man on a bicycle. (Tr. at 244, 246, 262-63). All three men were placed under arrest and transported back to the precinct. (Tr. at 237, 243-45). Detectives confirmed that the serial number on the recovered computer matched the serial number on Mr. Li's receipt from J&R. (Tr. at 250). Ultimately, the charges against all three were dropped. (Tr. at 249). The computer was returned to Mr. Li by the police approximately one month later. (Tr. at 77).

B.   The Trial and Subsequent Proceedings

On August 13, 2004, Mr. Rodriguez and Mr. Medina testified before a grand jury. (H. Tr. at 44; Tr. at 314-15). Mr. Rodriguez testified that he happened upon Mr. Li's unattended J&R bag in the middle of the street and that he picked it up and began to walk away. (Brief for Defendant-Appellant ("Pet. App. Br."), attached as Exh. A to Declaration of Leilani Rodriguez in Opposition to the Petition for a Writ of Habeas Corpus dated Aug. 31, 2010 ("L.

4

Rodriguez Decl."), at 4).  According to Mr. Rodriguez, he only began to run when Mr. Li discovered that his bag was gone and began screaming.  (Pet. App. Br. at 4).  Mr. Li also testified in the grand jury, and he exhibited some confusion regarding how the defendants were dressed on the day of the robbery and which of them had played what part in robbing him.  (Tr. at 111-14, 165).  Nonetheless, the grand jury indicted both Mr. Rodriguez and Mr. Medina on first and second degree robbery charges.  (Tr. at 18-20).

On April 21, 2005, a joint trial of Mr. Rodriguez and Mr. Medina began before Justice Gregory Carro in New York State Supreme Court, New York County.  (Tr. at 1, 19).  Prior to trial, a hearing had been held during which the defendants sought suppression of various pieces of evidence, including the exclusion or redaction of recordings of the 911 calls that were made as Mr. Li and Mr. Zhang chased Mr. Rodriguez and Mr. Medina.  (H. Tr. at 46-52).  At the hearing, Justice Carro determined that the recordings were admissible under the present sense impression and excited utterance exceptions to the hearsay rule, but he granted the defendants' request that any references to a "robbery" be redacted from the recordings, since the callers had not observed any robbery take place and were therefore either speculating or reporting hearsay. (H. Tr. at 50, 55-58).  However, at trial the prosecutor expressed confusion over how to appropriately redact the tapes, and Justice Carro appeared to agree that not all references to a robbery having occurred needed to be redacted.  (Tr. at 279-82).  Mr. Rodriguez's attorney objected repeatedly to the introduction of this evidence,

but the partially redacted recordings were ultimately played for the jury. (H. Tr. at 49-51, 55-57; Tr. at 352-53).

Mr. Li testified at the trial and was able unequivocally to identify both of the defendants as the men who had robbed him and to distinguish the roles each of them had played in the robbery. (Tr. at 50-52). Neither Mr. Rodriguez nor Mr. Medina testified, but redacted portions of their grand jury testimony were presented to the jury. (Tr. at 313-16, 362-63, 367-69). As the trial proceeded, Mr. Rodriguez repeatedly expressed to the court his objections to the representation he was receiving from trial counsel, in particular to his counsel's failure to track down Mr. Zayas, as well as his purported failure to object to the introduction of the partially redacted 911 recordings. (Tr. at 273-79, 363-67; Sentencing Transcript ("S. Tr.") at 9-10). On April 25, 2005, the jury convicted both Mr. Rodriguez and Mr. Medina of first and second degree robbery, and on June 29, 2005, Justice Carro sentenced Mr. Rodriguez to concurrent terms of twenty five and fifteen years for robbery in the first and second degrees, respectively, the maximum sentences for a defendant with one predicate violent felony conviction. (Tr. at 319, 512-13; S. Tr. at 1, 3, 13-14).

The petitioner appealed his conviction to the Appellate Division, First Department, arguing that (1) the verdict of robbery in the first degree was against the weight of the evidence, (2) the admission of the 911 recordings violated state hearsay law and Mr. Rodriguez's rights under the Confrontation Clause of the Sixth

6

Amendment, and (3) Mr. Rodriguez's sentence should be reduced in the interest of justice. (Pet. App. Br. at ii-iii). The First Department denied this appeal on April 17, 2008, finding that: (1) the verdict was not against the weight of the evidence because testimony established that a firearm was displayed during the robbery and there was "no basis for disturbing the jury's determinations concerning credibility," (2) the 911 calls were properly admitted under both New York law and the Confrontation Clause because they were nontestimonial present sense impressions (and because any error in their redaction was harmless), and (3) there was "no basis for reducing the sentence." People v. Rodriguez, 50 A.D.3d 476, 476, 857 N.Y.S.2d 74, 75 (1st Dep't 2008). Mr. Rodriguez's application for leave to appeal to the New York Court of Appeals was denied on July 30, 2008. (Letter from Rosemary Herbert to Chief Judge Judith S. Kaye dated May 22, 2008, attached as Exh. E to L. Rodriguez Decl.; Certificate Denying Leave dated July 30, 2008, attached as Exh. G to L. Rodriguez Decl.).

Subsequently, the petitioner applied for a writ of error coram nobis on May 12, 2009, arguing that his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel and prosecutorial misconduct, issues that the petitioner claimed "were readily discernable from the record below." (Affidavit of Gary Rodriguez in Support of Motion for Error Coram Nobis dated May 12, 2009 ("Rodriguez Aff."), attached as part of Exh. H to L. Rodriguez Decl., ¶¶ 2-3). The petitioner filed a second, apparently identical application for a writ of error coram

nobis two months later. (Notice of Motion dated July 14, 2009, attached as part of Exh. I to L. Rodriguez Decl.). This application was denied by the Appellate Division on October 8, 2008, and leave to appeal was denied by the Court of Appeals on February 17, 2010. (Order dated Oct. 8, 2009, attached as Exh. L to L. Rodriguez Decl.; Application for Leave to Appeal dated Nov. 5, 2009, attached as Exh. M. to L. Rodriguez Decl.; Certificate Denying Leave dated Feb. 17, 2010, attached as Exh. O to L. Rodriguez Decl.). On March 8, 2010, Mr. Rodriguez filed the instant petition. (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Pet.") at 6).

Discussion

A.    Standard for Habeas Corpus Review

Under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), 28 U.S.C. § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"The 'contrary to' and 'unreasonable application' clauses [of § 2254(d)] have independent meanings." Douglas v. Portuondo, 232 F. Supp. 2d 106, 111 (S.D.N.Y. 2002) (citing Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives

at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. (alteration in original) (quoting Jones, 229 F.3d at 119).   To determine if a decision is an unreasonable application of clearly established federal law under the AEDPA, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 786 (2011).   The AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents" but "goes no farther."   Id. at __, 131 S. Ct. at 786.

In order for a federal court to review a state court decision at all, the petitioner must first have exhausted available state court remedies.   Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam); see also 28 U.S.C. § 2254(b)(1); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001).   Exhaustion requires that the factual and legal basis for each claim be fairly presented to the highest available state court, and that the petitioner utilize "'all available mechanisms to secure appellate review of the denial of that claim.'"   Mayen v. Artist, No. 06 Civ. 14261, 2008 WL 2201464, at *4 (S.D.N.Y. May 23, 2008) (quoting Klein v. Harris, 667 F.2d

274, 282 (2d Cir. 1981)); <u>see also</u> 28 U.S.C. § 2254(c); <u>Galdamez v. Keane</u>, 394 F.3d 68, 72 (2d Cir. 2005); <u>Torres v. McGrath</u>, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006).   "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."   <u>Daye v. Attorney General of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc); <u>accord</u> <u>Jones v. Keane</u>, 329 F.3d 290, 294-95 (2d Cir. 2003). A petitioner need not cite "book and verse on the federal constitution" to alert a state court to the nature of a legal claim.   <u>Picard v. Connor</u>, 404 U.S. 270, 278 (1971) (citation omitted); <u>accord</u> <u>Jackson v. Edwards</u>, 404 F.3d 612, 619 (2d Cir. 2005); <u>Daye</u>, 696 F.2d at 192.   However, a state court should not have to guess that a constitutional claim is involved.   <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 689 (2d Cir. 1984); <u>see also</u> <u>Galdamez</u>, 394 F.3d at 74 (holding state's highest court need not "look for a needle in a paper haystack" (quoting <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991)).   A petitioner may fairly apprise the state court that he is raising a federal constitutional claim and of the factual and legal premises underlying the claim by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

<u>Daye</u>, 696 F.2d at 194.   Finally, even when a claim is not exhausted, a district court may reach the merits to deny the

petition.   28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Lurie v. Wittner, 228 F.3d 113, 124, 125 (2d Cir. 2000).

Habeas corpus review is further limited in that a "claim resolved on independent and adequate state procedural grounds is generally not subject to review on habeas." Dunn v. Sears, 561 F. Supp. 2d 444, 452 (S.D.N.Y. 2008) (citing Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)).  A state procedural bar qualifies as an "independent and adequate" state law ground if "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'"  Olba v. Unger, 637 F. Supp. 2d 201, 207 (S.D.N.Y. 2009) (quoting Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995)).  A state procedural rule will generally be adequate to preclude habeas review if it is "'firmly established and regularly followed.'"  Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).  Additionally, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'"  Grey, 933 F.2d at 120 (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)).  Nonetheless, "[f]ederal review [of procedurally barred claims] is permissible if the petitioner can demonstrate any one of the following circumstances: (1) actual innocence of the crime

11

charged; (2) cause for the procedural default resulting in prejudice; or (3) that the procedural bar that the state court applied is not adequate." <u>Dunn</u>, 561 F. Supp. 2d at 452-53 (internal citations omitted).

Mr. Rodriguez has timely filed this claim pursuant to the AEDPA's statute of limitations. (Pet. at 5, 6; Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 12-13); <u>see also</u> 28 U.S.C. § 2244(d)(1). Therefore, the AEDPA's requirements and standard of review will be applied to each of the claims raised in his petition.

B.   <u>Weight of the Evidence</u>

On direct appeal, Mr. Rodriguez sought to overturn his conviction on the grounds that the verdict was against the weight of the evidence. However, in so doing, Mr. Rodriguez did not cite any federal cases nor allude to any federal law. (Pet.. App. Br. at 10-14). Indeed, a weight of the evidence claim is a state law claim that is not cognizable in federal court. "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." <u>Garrett v. Perlman</u>, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and quotation marks omitted); <u>accord</u> <u>Williams v. New York</u>, No. 06 Civ. 2475, 2009 WL 281687, at *4 (S.D.N.Y. Feb. 6, 2009) (citing cases), <u>report and recommendation adopted</u>, 2009 WL 928102 (S.D.N.Y. March 31, 2009).

Even generously construing the petition to raise a sufficiency of the evidence claim, in order to exhaust a federal claim for purposes of habeas review, that claim must be "fairly presented to the state courts." Picard, 404 U.S. at 275-76. The petitioner made no mention of the federal constitution and did not rely on any federal caselaw; indeed, the state law that he cites for the "weight of the evidence" standard in explicitly contrasts the federal "sufficiency of the evidence" standard. (App. Br. at 10-11); see also People v. Cahill, 2 N.Y.3d 14, 57-58, 777 N.Y.S.2d 332, 354-55 (2003); People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 763 (1987). Thus, there was no indication to the state appellate courts that the petitioner was pursuing a federal constitutional claim of sufficiency of evidence, and any such claim that he might be asserting here is unexhausted.

However, the petitioner is no longer able to raise a sufficiency of the evidence claim through a motion to vacate judgment under Section 440.10 of New York Criminal Procedure Law. When the error complained of relates to matters on which the record is already clear, the claim must be raised on direct appeal, see Garcia v. Scully, 907 F. Supp. 700, 706 (S.D.N.Y. 1995), and "New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the claim on direct appeal," Aparicio, 269 F.3d at 91 (citing N.Y. Crim. Proc. L. § 440.10); see also Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (finding ineffective assistance claim "waived . . . under § 440.10" and "procedurally defaulted for the purposes of federal habeas review"

13

where petitioner's "appellate counsel unjustifiably failed to argue [it] on direct appeal despite a sufficient record"); <u>People v. Brown</u>, 59 A.D.3d 1058, 1059, 872 N.Y.S.2d 800, 801 (4th Dep't 2009) ("Where, as here, 'sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review' of the defendant's contentions, the court must deny a motion to vacate the judgment." (quoting N.Y. Crim. Proc. L. § 440.10(2)(c))).   Therefore, a sufficiency of the evidence claim by Mr. Rodriguez may be deemed exhausted, but it is nevertheless procedurally barred.   Failure to raise a claim on direct appeal has been held to be an "adequate and independent state ground" sufficient to bar a petitioner's habeas corpus claim.   <u>See, e.g.</u>, <u>Aparicio</u>, 269 F.3d at 93; <u>Brown v. Fisher</u>, No. 06 Civ. 2771, 2010 WL 3452372, at *8 (S.D.N.Y. April 29, 2010), <u>report and recommendation adopted</u>, 2010 WL 3452420 (S.D.N.Y. Aug. 27, 2010); <u>Collins v. Artus</u>, No. 08 Civ. 1936, 2009 WL 2633636, at *9 (S.D.N.Y. Aug. 26, 2009).   Further, the petitioner has made no showing of cause and prejudice or actual innocence that would be sufficient to allow review of his claim. Thus, any claim regarding the sufficiency of the evidence is procedurally barred and may not be reviewed here.

C.   <u>Excessive Sentence</u>

For substantially similar reasons, the petitioner's claim that his sentence is excessive is unexhausted, and, though it may be deemed exhausted by virtue of its procedural default, it may not be reviewed.   The petitioner argued on direct appeal that his sentence

should be reduced in the interest of justice, but never alluded to a single federal law, case, or constitutional provision.  (Pet. App. Br. at 26-31).

> Although New York's Appellate Division has discretion to reduce a sentence in the interest of justice . . . , a federal habeas court considering a state-court conviction has no such power, and a claim that a sentence should be reduced in the interest of justice does not allege a violation of a federally protected right.

Baide-Ferrero v. Ercole, No. 06 Civ. 6961, 2010 WL 1257615, at *4 (S.D.N.Y. March 31, 2010).  Thus, this claim was not "fairly presented" to the state court and is not exhausted.  Moreover, the claim is record-based and can no longer be raised on collateral review; as such, the claim may be deemed exhausted, but is procedurally barred.  Finally, the petitioner has made no showing of cause and prejudice or actual innocence to excuse this procedural bar.  His claim that his sentence is excessive therefore may not be raised here.

    D.   911 Calls

        1.   Exhaustion

In contrast, the petitioner's claim that the introduction of recordings of 911 calls at trial violated his Sixth Amendment rights has been exhausted and may be considered here.[1]  The petitioner's trial counsel repeatedly objected to the introduction of these recordings, including in the context of a discussion of the federal constitutional standard for the admission of such calls.  (H. Tr. at 47-52, 55-58; Tr. at 281-82, 352-53).  On direct

---

[1] The respondent does not contest that this claim is exhausted.  (Resp. Memo. at 13-14).

appeal, the petitioner's appellate counsel challenged the
introduction of these recordings as violative of Mr. Rodriguez's
Confrontation Clause rights, and the Appellate Division decided
this claim on the merits in spite of the state's argument that it
had not been properly preserved for appellate review. (Pet. App.
Br. at 15-20; Brief for Respondent, attached as Exh. B to L.
Rodriguez Decl., at 31-32); Rodriguez, 50 A.D.3d at 476, 857
N.Y.S.2d at 75. By applying for leave to appeal this determination
to the Court of Appeals, Mr. Rodriguez presented his claim "to the
highest court of the pertinent state," Pesina v. Johnson, 913 F.2d
53, 54 (2d Cir. 1990), and this claim is therefore ripe for
substantive review under the AEDPA standard.[2]

    2.  Merits

In Crawford v. Washington, the Supreme Court held that
out-of-court, testimonial statements by witnesses that are
testimonial are barred from introduction at trial under the

---

[2] Unlike the petitioner's claim under the Sixth Amendment, any
claim that the petitioner has attempted to raise here (by citing
and attaching his appellate division brief) that the trial court
improperly applied state evidence law in violation of the Due
Process Clause, see generally Morgan v. Bennett, 204 F.3d 360, 371
(2d Cir. 2000) (finding that written request to consider and review
all issues raised by appellate brief was enough to adequately
present all issues discussed in brief), is unexhausted. The
appellate division brief does not cite any federal caselaw, and
indeed refers to the hearsay law argument as "nonconstitutional."
(App. Br. at 24). Therefore, this claim was not fairly presented
to the state courts. Nonetheless, for substantially the same
reasons as for the weight of the evidence and excessive sentence
claims, it may be deemed procedurally barred. See Grey, 933 F.2d
at 120. The petitioner has not shown cause and prejudice or a
miscarriage of justice, see Dunn, 561 F. Supp. 2d at 452-53, and
therefore only the Sixth Amendment aspects of his challenge to the
introduction of the 911 recordings will be addressed here.

Confrontation Clause, unless the witnesses are unavailable and the defendant had prior opportunity to cross-examine them.   541 U.S. 36, 53-54 (2004).   The Supreme Court elaborated on the standard for what is "testimonial" in <u>Davis v. Washington</u>, specifically applying the analysis to a 911 call.   547 U.S. 813, 817 (2006). Under <u>Davis</u>, a statement is not testimonial "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."   <u>Id.</u> at 822.   Accordingly, the Court found that statements on the 911 tape were nontestimonial because the statements were "frantic," made as "events . . . were actually happening" in the context of an "ongoing emergency," and elicited for the purpose of "resolv[ing] the present emergency."   <u>Id.</u> at 827-28; <u>see also</u> <u>Gonzalez v. Lape</u>, No. 09 CV 4021, 2011 WL 208407, at *7-8 (E.D.N.Y. Jan. 21, 2011); <u>United States v. Chen Kuo</u>, No. 10 CR 671, 2011 WL 145471, at *9 (E.D.N.Y. Jan. 18, 2011) (collecting cases); <u>Vasquez v. Rock</u>, No. 08 CV 1623, 2010 WL 2399891, at *5 (E.D.N.Y. June 10, 2010) ("[T]he 911 audiotape was not testimonial in nature because it related to an ongoing emergency, meaning that its admission did not implicate <u>Crawford</u>."); <u>Coleman v. Squilliante</u>, No. 06 Civ. 13518, 2008 WL 4452351, at *9 (S.D.N.Y. Oct. 2, 2008) ("Under <u>Davis</u>, the statements made by the unidentified bystander in his '911' call clearly were nontestimonial. The caller described events either as they were occurring or right after they had occurred . . . ."). A statement is testimonial "when the circumstances objectively

indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis, 547 U.S. at 822.  Determining whether a statement is given in order to address an ongoing emergency "is a fact-based question that must necessarily be answered on a case-by-case basis."  People v. Nieves-Andino, 9 N.Y.3d 12, 15, 840 N.Y.S.2d 882, 884 (2007).

The 911 recordings admitted in this case fit squarely within the Supreme Court's definition of nontestimonial -- and therefore admissible -- statements.  The 911 callers described an ongoing chase, and indeed it was their prompt and accurate reporting of this chase and description of the involved parties and their locations that allowed the police to respond quickly and apprehend the suspects in the immediate aftermath of the robbery.  (H. Tr. at 50-51; Tr. at 122-129, 184-90).  Although at least one of the callers reported that there had been a robbery even though she had not herself witnessed the J&R bags being taken from Mr. Li, this does not render her statements testimonial.  (H. Tr. at 55-58). Only by conveying her sense that the individuals being pursued through the streets had just committed a robbery could the caller have adequately elicited appropriate police intervention.  Although the caller's direct personal knowledge as to whether there had been a robbery may be relevant under hearsay law, it is not relevant to whether the statements are testimonial, a status that is determined by whether "circumstances objectively indicat[e]" that there is an ongoing emergency.  Davis, 547 U.S. at 822; cf. Brown v. Keane, 355

18

F.3d 82, 89-90 (2d Cir. 2004) (holding, pre-Crawford, that "present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures" and that excited utterances "must rest on personal knowledge" to be admissible); Chen Kuo, 2011 WL 145471, at *3-10 (holding that statements made to 911 operators were not admissible under hearsay law absent personal knowledge, but holding that admissible statements were nontestimonial for purposes of Confrontation Clause). To the extent that a statement is nontestimonial, the Confrontation Clause is not implicated by its introduction at trial. Whorton v. Bockting, 549 U.S. 406, 420 (2007); accord Squilliante, 2008 WL 4452351, at *8.

The petitioner argued on direct appeal that the emergency existed during the robbery, not during the subsequent chase, and therefore ended prior to the witnesses calling 911. (Pet. App. Br. at 18). However, this is an overly formalistic application of the distinction, enunciated in Davis, between statements made "to determine the need for emergency assistance" and testimonial statements made "once that purpose has been achieved." Davis, 547 U.S. at 828. Although Mr. Li's bags had already been taken through threat of force, the emergency to which the police were then called to respond was the recovery of those bags from the robbers who had run off with them, not a new or distinct emergency that began only once Mr. Li decided to chase the robbers. See United States v. Harper, No. 08-CR-307, 2010 WL 1507869, at *4 (E.D. Wis. April 14, 2010) (finding nontestimonial a statement made "spontaneously,

rather than in response to police questioning . . . to assist the officers responding to the ongoing emergency presented by a fleeing suspect" although defendant contended that "the emergency situation presented by the shots being fired had ended").   Similarly, any description of the suspects given to the 911 operators was provided in order to allow the police to identify the individuals who were presently in the process of escaping, not to piece together what had happened once that escape had ended.   (See Pet. App. Br. at 18-19).   Thus, the trial court properly admitted these nontestimonial statements.   At the very least, the state court's determination that the statements were "not testimonial," see Rodriguez, 50 A.D.3d at 476, 857 N.Y.S.2d at 75, was a reasonable application of Supreme Court precedent under the AEDPA standard, such that even if it was an incorrect determination, "fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."   See Harrington, __ U.S. at __, 131 S. Ct. at 786.

Furthermore, Confrontation Clause violations are not sufficient to merit per se granting of a habeas corpus petition; they are instead reviewed under a harmless error standard.   United States v. Becker, 502 F.3d 122, 130 (2d Cir. 2007); Munford v. Graham, No. 09 Civ. 7899, 2010 WL 2720395, at *3 (S.D.N.Y. June 29, 2010).   In conducting a harmless error analysis, courts look at several factors, including "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or

contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" Perkins v. Herbert, 596 F.3d 161, 177 (2d Cir. 2010) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)), cert. denied, ___ U.S.___, 131 S. Ct. 318 (2010). In this case, even if the 911 statements were admitted in violation of the Confrontation Clause, this error would be harmless in light of the substantial evidence against the petitioner, including the eyewitness testimony of the victim (which the jury credited in concluding that Mr. Rodriguez had robbed Mr. Li at gunpoint, although no gun was mentioned on the 911 tapes), the testimony of the police officers who actually intercepted Mr. Rodriguez and Mr. Medina, and the recovery of Mr. Li's laptop case, which was in the petitioner's possession when he was arrested. Thus, the 911 evidence was, as the Appellate Division concluded, "cumulative to other evidence," and any constitutional error in its introduction was harmless. See Rodriguez, 50 A.D.3d at 476, 857 N.Y.S.2d at 75. Therefore, I recommend that the petitioner's Confrontation Clause claim be dismissed.

D.   Ineffective Assistance of Counsel

The petition alternately articulates a claim regarding the performance of the petitioner's counsel as "Ineffective Assistance of Appellate Counsel" (Pet. at 3) and "Ineffective Assistance of Counsel" (Pet. at 4). No claim regarding the performance of counsel was raised by the petitioner on direct appeal, but in his coram nobis application, Mr. Rodriguez argued that he had received

ineffective assistance of appellate counsel because, although he "filed a well drafted brief," his appellate counsel "inexplicably failed to raise the issues of ineffective assistance of trial counsel and prosecutorial misconduct that were readily discernable from the record below." (Rodriguez Aff., ¶ 3). I will therefore treat Mr. Rodriguez's claims for ineffective assistance of trial and appellate counsel together in this section, in conjunction with his claim of prosecutorial misconduct, which is unequivocally raised in his petition. (Pet. at 3, 4).

       1.   <u>Exhaustion and Procedural Bar</u>

Under New York law, a writ of error coram nobis is available "only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel," and other constitutional errors may only be advanced in coram nobis applications to the extent that they are "predicates for the claim of ineffectiveness, on the theory that effective counsel would have appealed on those grounds." <u>Turner v. Artuz</u>, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks omitted). In other words, no claim besides ineffective assistance of appellate counsel can be exhausted through an application for a writ of error coram nobis. Thus, the petitioner has exhausted his ineffective assistance of appellate counsel claim by virtue of his coram nobis application, the denial of which he appealed to the state's highest court. <u>See</u> 28 U.S.C. § 2254(b), (c). However, neither of the underlying claims -- ineffective assistance of trial counsel and prosecutorial misconduct -- were exhausted by this

procedure, and therefore they require further analysis.

The petitioner's coram nobis application argues that "the prosecutor repeatedly, during summation, speculated and interjected facts that were not supported by the [prosecution's] case in chief," and gave improper instructions to the jury that they "disregard" certain contradictory testimony by the victim (Rodriguez Aff., ¶ 20); and he notes that "the prosecutorial misconduct is clearly visible from the record" (Rodriguez Aff., ¶ 4). Mr. Rodriguez did not make a prosecutorial misconduct argument on direct appeal, but, as discussed above, because the claim is based entirely on the trial record, it can no longer be raised in a state collateral challenge. See Aparicio, 269 F.3d at 91 (citing N.Y. Crim. Proc. L. § 440.10). Thus, although Mr. Rodriguez's prosecutorial misconduct claim has not been exhausted, it may be deemed exhausted because it is procedurally barred. See Grey, 933 F.2d at 120.

However, Mr. Rodriguez argues in his application that his appellate counsel was ineffective for failing to assert this claim in his direct appeal. (Rodriguez Aff., ¶ 19). Ineffective assistance of counsel can suffice as cause for a procedural default. "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)); see also DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004). Thus, whether or not the petitioner's prosecutorial

23

misconduct claim is procedurally barred will depend upon an analysis of his claim of ineffective assistance of appellate counsel, which in turn will depend upon the viability of his prosecutorial misconduct and ineffective assistance of trial counsel claims. The merits of all three will therefore be addressed below.

In contrast, the petitioner's argument in his coram nobis application that his assigned trial counsel failed to "interview or produce" a witness whose "testimony was sure to raise an issue of 'reasonable doubt'" (Rodriguez Aff. ¶¶ 13-18), although not raised on direct appeal, is not entirely record-based, and therefore is not procedurally barred. See Polanco v. Ercole, No. 06 Civ. 1721, 2007 WL 2192054, at *7 (S.D.N.Y. July 31, 2007) ("[A] claim may be raised on direct appeal only if all the factual information necessary to determine the claim appears in the trial record."). Mr. Rodriguez's claim against his trial counsel requires consideration of Mr. Zayas' likely testimony, which was not established at trial. Therefore, that claim may still be raised in a motion to vacate under Section 440.10 of New York Criminal Procedure Law and is unexhausted. Id.

Typically, when a habeas corpus petition is "mixed" -- presenting both exhausted and unexhausted claims -- the court "has discretion either to dismiss the petition, or to dismiss only the unexhausted claims and stay the balance of the petition." Zarvela v. Artuz, 254 F.3d 374, 376 (2d Cir. 2001). Although dismissal is inappropriate where it would "jeopardize the timeliness of a

collateral attack," <u>Freeman v. Page</u>, 208 F.3d 572, 577 (7th Cir. 2000), it "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," <u>Rhines v. Weber</u>, 544 U.S. 269, 277 (2005).  In this case, the petitioner has been trying to raise an ineffective assistance of trial counsel claim essentially since the trial first began.  (Tr. at 273-79, 363-68; S. Tr. at 9-11; Letter of Rosemary Herbert dated April 12, 2007 ("Herbert Letter"), attached as Exh. A to Memorandum of Law, attached as part of Exh. H to L. Rodriguez Decl.).  This might militate in favor of staying this claim and allowing it to be exhausted in state court because the good cause standard is not overly high.  <u>See</u> <u>Gomez v. Ercole</u>, No. 09 Civ. 7723, 2010 WL 4118357, at *1 (S.D.N.Y. Oct. 19, 2010) ("A petitioner's showing of reasonable confusion concerning his delay in exhausting his state court remedies satisfied the good cause requirement.").  However, good cause can generally only be shown by "factors outside of the petitioner's own control," <u>Garcia v. Laclair</u>, No. 06 Civ. 10196, 2008 WL 801278, at *3 (S.D.N.Y. March 24, 2008), and the petitioner has not shown any confusion regarding availability of a 440.10 motion.[3]  But, "even if a petitioner had good cause for [] failure [to exhaust], the district

---

[3]  In fact, the petitioner was explicitly notified by his appellate counsel that his claim for ineffective assistance of trial counsel was based on facts outside the record and would be properly raised in a 440.10 motion.  (Herbert Letter at 2).  Thus, although the discussion below indicates that this claim is meritless and should be dismissed on that ground, Mr. Rodriguez also would struggle to demonstrate good cause for staying his petition while he exhausted state remedies for this claim.

court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Rhines, 544 U.S. at 277.  Therefore, for this additional reason the merits of Mr. Rodriguez's claim of ineffective assistance of trial counsel will be reviewed below.

      2.  Merits

          a.  Prosecutorial Misconduct

As a general rule, "prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)).  Furthermore, any misconduct "must be assessed in the context of the entire trial."  Id. (internal quotation marks omitted).  The relevant inquiry, therefore, is not whether the prosecutor's improper questions and remarks "were undesirable or even universally condemned," but whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted); accord Murray v. Greene, No. 06 Civ. 3677, 2006 WL 3751294, at *17 n.36 (S.D.N.Y. Dec. 21, 2006) (describing high bar in prosecutorial misconduct cases).

Here, the petitioner argues that it was improper for the prosecutor to instruct the jury as to how they should weigh or interpret testimony on the record, for example by dismissing inconsistencies in the victim's testimony as "a problem with

26

semantics" and urging the jury not to "get caught up" with them. (Tr. at 406).   In at least two other instances during her summation, the prosecutor dismissed or minimized errors in witness recollections, arguing that one police officer misstated a date only because "she made a mistake" and urging jurors not to "be distracted" by an apparently erroneous statement by one of the 911 callers.   (Tr. at 413, 425).   However, none of these comments is improper.   Prosecutors may make "'fair comment[s] on the evidence'" presented at trial.   <u>Roman v. Filion</u>, No. 04 Civ. 8022, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (quoting <u>People v. Perez</u>, 18 A.D.3d 480, 480, 794 N.Y.S.2d 439, 440 (2d Dep't 2005)).   At no time did the prosecutor misstate or misrepresent the evidence, nor did she speculate as to what any particular witness would have said or "suggest that [she] had special knowledge of facts not before the jury."   <u>United States v. Perez</u>, 144 F.3d 204, 210 (2d Cir. 1998).   A prosecutor is entitled to "present inferences based on the evidence."   <u>Id.</u> at 211.   In this case, the prosecutor accurately summarized or directly quoted the evidence presented to the jury at trial and then asked the jury to draw or not draw certain conclusions based on that evidence.   This was within the scope of the argument she was entitled to make in summation.

More substantially, Mr. Rodriguez also cites to the objections made by his trial counsel to the prosecutor's summation to the extent that her summation alluded to the existence of a "man on the bicycle" to whom, under the prosecution's theory, Mr. Rodriguez and Mr. Medina handed off the stolen laptop.   (Rodriguez Aff., ¶ 20;

Tr. at 459).  Mr. Rodriguez's trial counsel's objection appeared to be based on his understanding that the hearsay evidence admitted at trial regarding a man on a bicycle was only admissible "for the purpose of explaining the police officers' actions, not for the truth of what was asserted within those statements." (Tr. at 459). The prosecutor did refer to the man on the bicycle repeatedly during her summation, going so far as to state that "you can infer that the lap top computer was passed off to this third suspect, the male black on the bike." (Tr. at 412, 413, 415, 416, 425-26, 438). However, at no time did she suggest knowledge of any evidence that had not been allowed during the trial; witness testimony had clearly established that the police suspected there was a third accomplice on a bicycle.  (Tr. at 199-206, 213-15, 270, 328-30).[4]

---

[4] The petitioner's attorney may fairly be understood to have been objecting during summation to the erroneous admission of hearsay evidence regarding an alleged third suspect.  Indeed, he objected to the introduction of testimony on that ground as it was introduced.  (Tr. at 199-204, 328).  Ultimately, the court ruled that the testimony was admissible.  (Tr. at 203-04).  Regardless, that claim has not been fairly presented here, and, although unexhausted, would be procedurally barred from state remedy because it is a record-based claim.  See Grey, 933 F.2d at 120.  What is more, "[i]n order for an evidentiary error under state law to constitute a due process violation under the federal Constitution, a petitioner must show 'that the error was so pervasive as to have denied him a fundamentally fair trial.'" Mannino v. Graham, No. 06 CV 6371, 2009 WL 2058791, at *4 (E.D.N.Y. July 15, 2009) (quoting Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)).  Satisfying this standard requires the petitioner to "establish that the evidence was (a) erroneously admitted under New York law and (b) 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"  Id. (quoting Collins, 755 F.2d at 19).  Given this high bar, it would not be appropriate to use the fact that hearsay may have been erroneously admitted in the trial court to deem the prosecutor's comments on that evidence improper, especially in light of the harmlessness of those comments, which will be discussed below.

Furthermore, "'[w]here a prosecution comment is a rejoinder to defense counsel's comments, that factor ameliorates the effect of an objectionable prosecution comment upon the fairness of a trial.'" Mackey v. McGinnis, No. 05 Civ. 4899, 2006 WL 2290829, at *10 (S.D.N.Y. Aug. 9, 2006) (quoting Moore v. Warden, Southport Correctional Facility, 380 F. Supp. 2d 321, 331 (S.D.N.Y. 2005)); see also Miller v. Smith, No. 05 CV 5976, 2010 WL 4961666, at *7-8 (E.D.N.Y. Dec. 1, 2010). Both Mr. Rodriguez's and Mr. Medina's trial counsel referred repeatedly and at length during their summations to the fact that the laptop and gun had never been recovered, and suggested that any arguments by the prosecution that they had been handed off to a man on a bicycle were incorrect. (Tr. at 372-73, 375-78, 380, 385, 388-89). Mr. Rodriguez's trial counsel in fact criticized the police for failing to exert substantial effort to find the "bicycle man." (Tr. at 388). The prosecutor's statements with respect to the cyclist were thus not fatal to the fairness of Mr. Rodriguez's trial.

Furthermore, to prevail on a claim that a prosecutor's remarks on summation resulted in constitutional error, the petitioner must show "substantial prejudice." United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2005) (internal quotation marks omitted). A court assessing such a claim must consider "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004). In addition, courts may consider whether the evidence was manipulated

or misstated, whether the remark implicated other constitutional rights of the accused, and whether the remark was "invited by or [] responsive to the opening [or] summation of the defense." Darden, 477 U.S. at 182.  Even if the prosecutor's statements amounted to misconduct, they were made after the judge admonished the jury that "you are free to draw your own conclusions and inferences from the evidence as you analyze it" and that "[n]othing said by . . . the district attorney is evidence in this case, it is argument." (Tr. at 370).  Additionally, the prosecutor's claims with respect to the man on the bicycle, although arguably improper, only served to offer a possible explanation for the absence of the laptop computer, cash, and gun.  Mr. Rodriguez was apprehended by the police in possession of property sufficient to establish that he had committed a robbery.  Whether or not there was a man on a bicycle was therefore not centrally important to the case against the petitioner.   Finally, evaluated in the context of the entire trial, Mr. Rodriguez did not suffer prejudice from prosecutorial misconduct sufficient to merit habeas corpus relief. See Dunn, 561 F. Supp. 2d at 457-58.

b.   Ineffective Assistance of Trial Counsel

In order to make out a claim for constitutionally ineffective assistance of counsel, the petitioner must satisfy the "'rigorous,'" "'highly demanding'" test articulated in Strickland v. Washington, 466 U.S. 668 (1984).  Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), and Kimmelman v. Morrison, 477 U.S. 365, 382

30

(1986)).  He must first establish that his counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness" given the facts and circumstances of the particular case.  United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005); see Strickland, 466 U.S. at 687, 690.  Second, the petitioner must "affirmatively prove" that his attorney's deficient performance prejudiced the outcome of the case.  Strickland, 466 U.S. at 687, 693.  "'Surmounting Strickland's high bar is never an easy task.'" Harrington, __ U.S. at __, 131 S. Ct. at 788 (quoting Padilla v. Kentucky, __ U.S. __, __, 130 S. Ct. 1473, 1485 (2010)).

The petitioner argues that his trial counsel was ineffective because he failed to track down Jonathan Zayas to have him testify at trial.  (Rodriguez Aff., ¶¶ 13-18).  But "'[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.'"  Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (alteration in original) (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)).  During the trial, Mr. Rodriguez questioned his counsel's failure to locate Mr. Zayas, and counsel defended his actions, noting that "as a matter of strategy, that it's very unlikely to be improved for Mr. Rodriguez based on what Mr. Zayas said," that Mr. Zayas did not want to testify, and that he "is ordinarily not the kind of witness I want to call."  (Tr. at 366).  This reasoned strategic decision by trial counsel does not fall "below an objective standard of reasonableness."  Strickland, 466 U.S. at 688; accord Arteca, 411 F.3d at 320.

31

Although "[c]onclusary [sic] and speculative allegations as to the testimony of uncalled witnesses are insufficient to show ineffective assistance of counsel," Rosario v. Smith, No. 07 Civ. 3611, 2009 WL 1787715, at *15 (S.D.N.Y. June 23, 2009), Mr. Rodriguez was able to provide an affidavit from Mr. Zayas in support of his coram nobis application, in which Mr. Zayas stated that he would have been "willing to testify in behalf" of Mr. Rodriguez and that Mr. Rodriguez "had no connection to the Robbery or the lap top computer" (Affidavit of Jonathan Zayas dated April 19, 2006, attached as Exh. B to Rodriguez Aff., ¶¶ 5-6). Nonetheless, Mr. Rodriguez admitted in that application that it would be difficult to "say exactly what Zayas' testimony would have further revealed." (Rodriguez Aff., ¶ 16). Further, Mr. Rodriguez's trial counsel's reasonable determination that Mr. Zayas would not have been a reliable witness was not based only on the content of his testimony but also on what "sort of witness" he was likely to be. His professional judgment thus cannot be deemed deficient, even considering this affidavit.

Furthermore, Mr. Rodriguez cannot establish prejudice. There was substantial evidence introduced at trial to demonstrate that Mr. Rodriguez committed armed robbery, including Mr. Li's eyewitness testimony and the fact that Mr. Rodriguez was found in possession of one of Mr. Li's bags. Mr. Zayas' statement that Mr. Rodriguez "had no connection to the Robbery" was thus plainly contradicted by physical and testimonial evidence on the record and was not likely to influence the outcome of the case in the face of

that evidence.  Especially given counsel's assertion that Mr. Zayas
might not have, in fact, been willing to testify at trial, the
petitioner has failed to prove affirmatively that exclusion of this
testimony prejudiced the outcome of the case.

c.   Ineffective Assistance of Appellate Counsel

The petitioner argues that his appellate counsel was
ineffective because, "[w]hile court appointed appellate counsel
filed a well drafted brief counsel inexplicably failed to raise the
issues of ineffective assistance of trial counsel and prosecutorial
misconduct that were readily discernable from the record below."
(Rodriguez Aff. at 3).  Strickland's two-prong analysis applies
equally to the performance of appellate counsel.  Frederick v.
Warden, Lewisburg Correctional Facility, 308 F.3d 192, 197 (2d Cir.
2002); Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000).  It is
well established that appellate counsel "need not advance every
argument, regardless of merit, urged by the appellant."  Evitts v.
Lucey, 469 U.S. 387, 394 (1985); see also Sellan v. Kuhlman, 261
F.3d 303, 317 (2d Cir. 2001); Wynder v. Smith, No. 09 Civ. 4541,
2011 WL 70556, at *12 (S.D.N.Y. Jan. 10, 2011).  "However, a
petitioner may establish constitutionally inadequate performance if
he shows that counsel omitted significant and obvious issues while
pursuing issues that were clearly and significantly weaker."  Mayo
v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); accord Forte v.
LaClair, 354 Fed. Appx. 567, 569 (2d Cir. 2009), cert. denied, __
U.S. __, 130 S. Ct. 1521 (2010).  "To establish prejudice in the
appellate context, a petitioner must demonstrate that 'there was a

reasonable probability that [his] claim would have been successful before the [state's highest court].'" Mayo, 13 F.3d at 534 (alteration in original)(quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)). When appellate counsel is faulted for failing to raise a particular claim on direct appeal, if that claim is "not meritorious, there can be no merit to the claim that appellate counsel should have raised it." Jeremiah v. Artuz, 181 F. Supp. 2d 194, 200 (E.D.N.Y. 2002).

Mr. Rodriguez cannot establish a reasonable probability that the appellate court would have granted his prosecutorial misconduct and ineffective assistance of trial counsel claims. See Neely v. Marshall, No. 07 Civ. 9267, 2008 WL 2755830, at *10 (S.D.N.Y. July 14, 2008), report and recommendation adopted, 2008 WL 4090215 (S.D.N.Y. Sept. 3, 2008). Moreover, as discussed above, the appellate court would have been unlikely even to consider the latter claim, since it depended on evidence outside of the trial record. See Polanco, 2007 WL 2192054, at *7; People v. Delarosa, 287 A.D.2d 735, 736-37, 732 N.Y.S.2d 108, 110-11 (2d Dep't 2001); People v. Boyd, 244 A.D.2d 497, 497, 664 N.Y.S.2d 335, 336 (2d Dep't 1997) ("The defendant's claim of ineffective assistance of counsel, to the extent that it is premised on his attorney's alleged failure to investigate and call potential alibi witnesses, involves matters which are dehors the record and are not properly presented on direct appeal."). Mr. Rodriguez's appellate counsel was not ineffective for declining to raise claims that were either procedurally barred or meritless or both.

34

<u>Conclusion</u>

For the reasons set forth above, I recommend that Mr. Rodriguez's petition for a writ of habeas corpus be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, Room 650, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          February 22, 2011

Copies mailed this date to:

Gary Rodriguez
05-A-3652
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Leilani Rodriguez, Esq.
Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, New York 10271

35